IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LONZA WALKERSVILLE, INC.<br><br>Plaintiff,<br><br>v.<br><br>CELLULAR DYNAMICS INTERNATIONAL, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 16-1304 (RGA) |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION, FAILURE TO JOIN A REQUIRED PARTY, AND LACK OF SUBJECT MATTER JURISDICTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
kjacobs@mnat.com

*Attorneys for Defendant Cellular Dynamics International, Inc.*

OF COUNSEL:

Anthony A. Tomaselli
Kristin Graham Noel
Carly S. Conway
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
(608) 251-5000

February 2, 2017

TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..... 1

II. NATURE AND STAGE OF THE PROCEEDING ..... 1

III. SUMMARY OF ARGUMENT ..... 1

IV. STATEMENT OF FACTS ..... 2

V. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ..... 5

A. Legal Standard ..... 5

1. Delaware's Long-arm Statute is Co-extensive with Due Process ..... 6

2. General Jurisdiction Requires "Continuous And Systematic" Contacts With the Forum State ..... 6

3. Specific Jurisdiction Requires Evidence of Efforts to Defend, Enforce, or Exclusively License the Patents-in-Suit in the Forum State ..... 7

4. Stream-Of-Commerce Theory Does Not Apply to a Personal Jurisdiction Analysis in a Patent Declaratory Judgment Action ..... 8

B. Argument ..... 8

1. Plaintiff Cannot Establish Personal Jurisdiction Over CDI or WARF Under the Delaware Long-Arm Statute ..... 8

2. Plaintiff Cannot Establish General Jurisdiction Over CDI or WARF Because Their Contacts With Delaware Are Not "Continuous And Systematic." ..... 9

3. Plaintiff Cannot Establish Specific Jurisdiction Over CDI or WARF Because They Have Not Engaged in Enforcement, Defense or Exclusive Licensing of the Patents-in-Suit In Delaware ..... 11

4. Plaintiff Cannot Rely on a Stream-Of-Commerce Theory, Which is Irrelevant to Personal Jurisdiction in a Declaratory Judgment Action ..... 12

VI. ALTERNATIVELY, THE COURT SHOULD DISMISS THIS CASE FOR FAILURE TO JOIN AN INDISPENSIBLE PARTY ..... 12

VII. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION ........................ 14

VIII. CONCLUSION ........................................................................................................ 20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*3D Systems, Inc. v. Envisiontec, Inc.*,
575 F. Supp. 2d 799 (E.D. Mich. 2011) ..................... 16

*A123 Sys., Inc. v. Hydro–Quebec,*
626 F.3d 1213 (Fed. Cir. 2010) ..................... 13

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
689 F.3d 1358 (Fed. Cir. 2012) ..................... 5

*Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*,
No. CIV.A. 19890-NC, 2005 WL 578972 (Del. Ch. Mar. 3, 2005) ..................... 5

*Autogenomics, Inc. v. Oxford Gene Technology Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009) ..................... 12

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
552 F.3d 1324 (Fed. Cir. 2008) ..................... 6, 8, 12

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
444 F.3d 1356 (Fed. Cir. 2006) ..................... 8, 12

*Campbell Pet Co. v. Miale*,
542 F.3d 879 (Fed. Cir. 2008) ..................... 11

*Dentsply Int'l, Inc. v. Centrix, Inc.*,
553 F. Supp. 289 (D. Del. 1982) ..................... 13

*Devicor Med. Prods., Inc. v. Biopsy Sciences, LLC*,
2013 WL 486638 (D. Del. Feb. 7, 2013) ..................... 6

*Dow Corning Compound Semiconductor Solutions, LLC v. Cree, Inc.*,
No. 11-14255, 2013 WL 993701 (E.D. Mich. Mar. 13, 2013) ..................... 17

*GAF Building Materials Corp. v. Elk Corp. of Dallas,*
90 F.3d 479 (Fed. Cir. 1996) ..................... 20

*Geospan Corp. v. Pictometry Intern Corp.*,
598 F. Supp. 2d 968 (D. Minn. 2008) ..................... 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ..................... 7, 10

*Grober v. Mako Prods., Inc.*,
686 F.3d 1335 (Fed. Cir. 2012)........................................................................ 5, 6, 7

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408 (1984)........................................................................................ 6

*Hewlett-Packard Co. v. Acceleron LLC,*
587 F.3d 1358 (Fed. Cir. 2009)........................................................................ 16, 18

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig*.,
693 F. Supp. 2d 409 (D. Del. 2010)................................................................ 14

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
599 F.3d 1377 (Fed. Cir. 2010)........................................................................ 19

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.,*
201 F.R.D. 337 (D. Del. 2001) ........................................................................ 13

*Liqui-Box Corp. v. Scholle Corp.*,
No. CIV.A. 12-464 GMS, 2013 WL 3070872 (D. Del. June 17, 2013)................................. 9

*M2M Sols. LLC v. Simcom Wireless Sols. Co*.,
935 F. Supp. 2d 740 (D. Del. 2013).................................................................. 6

*MedImmune, Inc. v. Genentech, Inc*.,
549 U.S. 118 (2007)........................................................................................ 15

*Microsoft Corp. v. DataTern, Inc.*,
755 F.3d 899 (Fed. Cir. 2014).......................................................................... 15

*Pfizer Inc. v. Elan Pharm. Research Corp.*,
812 F. Supp. 1352 (D. Del. 1993).................................................................... 13

*Prasco, LLC v. Medicis Pharm. Corp*.,
537 F.3d 1329 (Fed. Cir. 2008)........................................................................ 15

*Radio Sys. Corp. v. Accession, Inc.*,
638 F.3d 785 (Fed. Cir. 2011).......................................................................... 7, 11

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
148 F.3d 1355 (Fed. Cir. 1998)........................................................................ 7, 8

*Samsung Elecs. Co., Ltd. v. ON Semiconducter Corp.,*
541 F. Supp. 2d 645 (D. Del. 2008)................................................................ 14

*SanDisk Corp v. STMicroelectronics*,
480 F.3d 1372 (Fed. Cir. 2007)........................................................................ 15

*Sony Elecs. Inc. v. Guardian Media Techs., Ltd.*,
497 F.3d 1271 (Fed. Cir. 2007)........................................................................................ 18

*Suprex Corp. v. Lee Scientific, Inc.*,
660 F. Supp. 89 (W.D. Pa. 1987)..................................................................................... 13

*Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*,
395 F.3d 1275 (Fed. Cir. 2005)........................................................................................ 11

*Wooster Bush v. Berman*,
No. 5:06-cv-474, 2008 WL 1744782 (N.D. Ohio 2008) ........................................................ 16

**Statutes**

10 Del. C. § 3104(c)........................................................................................................... 6, 9

## I. PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(7), Defendant, Cellular Dynamics International, Inc. ("CDI"), respectfully requests that the Court dismiss the Complaint. First, this Court lacks personal jurisdiction over CDI. Plaintiff also failed to join a necessary and indispensable party, Wisconsin Alumni Research Foundation ("WARF"), the owner of two of the patents-in-suit, which cannot be joined because it also is not subject to personal jurisdiction in this District. The claims also should be dismissed because of a lack of case or controversy at the time of filing. At the time of Plaintiff's filing of the Complaint, which is the only operative time to decide subject matter jurisdiction, CDI had never alleged that Plaintiff infringed the patents-in-suit, or threatened litigation. Accordingly, the Complaint should be dismissed.

## II. NATURE AND STAGE OF THE PROCEEDING

On December 22, 2016, Plaintiff filed its Complaint, which contains two counts. The first seeks declaratory judgment that United States Patent Nos. 8,183,038 ("the '038 Patent); 8,268,620 ("the '620 Patent"); 8,546,140 ("the '140 Patent"); 8,691,574 ("the '574 Patent"); 8,741,648 ("the '648 Patent"); 8,765,470 ("the '470 Patent"); and 9,447,382 ("the '382 Patent") (collectively, the "Patents-in-Suit") are invalid under 35 U.S.C. §§ 102, 103, and 112. (D.I. 1 at ¶ 76). The second seeks declaratory judgment that the '140, '620, '648, '574, and '382 Patents are unenforceable due to alleged inequitable conduct before the United States Patent and Trademark Office ("PTO"). (*Id.* at ¶ 81). This motion, in conjunction with CDI's alternative Motion to Transfer, filed concurrently, is CDI's first response to the Complaint.

## III. SUMMARY OF ARGUMENT

1. The Complaint should be dismissed under Rule 12(b)(2) because this Court lacks personal jurisdiction over CDI and WARF, under both the Delaware long-arm statute and the

due process clause. This Court cannot exercise personal jurisdiction because neither CDI nor WARF has the requisite minimum contacts with Delaware. Neither has a physical presence in Delaware, and neither conducts substantial business in Delaware. Because there is no personal jurisdiction over CDI, service of process under Delaware's long-arm statute was also improper under Rule 12(b)(5).

2. The Complaint should be dismissed under Rule 12(b)(7) because Plaintiff has failed to join the owner of the '038 and '620 Patents, WARF. WARF is an indispensable party as the actual owner of the'038 and '620 Patents, especially given that Plaintiff seeks a declaration of invalidity of all claims of both patents, and of unenforceability of all claims of the '620 Patent. Further, WARF cannot be added as a party because WARF is not subject to personal jurisdiction in Delaware.

3. The Complaint also should be dismissed because the Court lacks subject matter jurisdiction under Rule 12(b)(1), which must be assessed as of the date the Complaint was filed. None of CDI's pre-Complaint communications to Plaintiff created a substantial and immediate case or controversy. A declaration filed two years ago in support of the '620 Patent's nonobviousness during an *ex parte* reexamination also does not give rise to subject matter jurisdiction on the '620 Patent, much less the other six Patents-in-Suit.

## IV. STATEMENT OF FACTS

CDI is a Wisconsin corporation with its principal place of business in Madison, Wisconsin, located in the Western District of Wisconsin. (Declaration of Takashi Okada, ¶ 2 (hereinafter "Okada Decl.")). CDI is a leading innovator and manufacturer in the induced pluripotent stem cell (iPSC) field, and has pioneered techniques for developing and manufacturing iPSCs and differentiating them into functional human cells. (*Id.*). CDI is

registered to do business in Wisconsin and maintains its primary office in Madison, Wisconsin. (*Id.*). CDI's only other location is a leased space in California. (*Id.*).

Plaintiff filed this lawsuit against CDI on December 22, 2016 (D.I. 1), seeking declaratory judgment that the Patents-in-Suit are invalid, and that a subset of the Patents-in-Suit are also unenforceable due to alleged inequitable conduct before the PTO. Five of the Patents-in-Suit—the '140, '574, '648, '470, and '382 Patents—are owned by CDI. (Okada Decl., ¶ 3). CDI has not granted any third party an exclusive license for any of these five patents. (*Id.*). The '038 and '620 Patents are owned by WARF and licensed to CDI. (*Id.*). WARF is a not-for-profit Wisconsin corporation, located in Madison, Wisconsin, and is the designated patent management organization of the University of Wisconsin - Madison ("the University"). (Declaration of Michael Falk, ¶ 2 (hereinafter "Falk Decl.")). WARF's mission is to support research at the University by patenting and licensing University inventions and returning the proceeds of that licensing to fund additional research at the University. (*Id.*). Plaintiff has not named WARF as a party in this litigation. (D.I. 1).

On April 25, 2014, Plaintiff submitted a request to the PTO for *ex parte* reexamination of the '620 Patent. (Okada Decl., ¶ 4). In support of the patentability of the '620 Patent, CDI's then-Chief Technology Officer, Nicholas Seay, submitted a declaration regarding the nonobviousness of the claims. (*Id.*, Ex. 1). Mr. Seay presented evidence of secondary considerations of nonobviousness, including evidence of others copying the claimed invention. (*Id.*, Ex. 1 at ¶¶ 3–7). Mr. Seay mentioned Plaintiff as merely one of a list of individuals and companies developing iPSC lines using methods similar to those claimed in the '620 Patent. (*Id.*). The PTO confirmed the patentability of all claims of the '620 Patent over the asserted prior art, and issued a reexamination certificate on June 19, 2015. (Okada Decl., ¶ 6).

On November 4, 2015, CDI's current Chief Technology Officer, Takashi Okada, sent a letter to Plaintiff introducing CDI's licensing program for certain of its iPSC patents, including the '140 and '648 Patents. (*Id.*, ¶ 11, Ex. 2 at 1). This letter was addressed and sent to Plaintiff's address at 8830 Biggs Ford Road in Walkersville, Maryland. (*Id.*). Mr. Okada followed up with Plaintiff via-email, including additional information about the licensing program and a list of 19 patents and pending patent applications available for license, seven of which are at issue here. (*Id.*, Ex. 2 at 2–5). Seeking to continue the 2015 discussions, CDI, in conjunction with WARF, sent another letter to Plaintiff on November 29, 2016, regarding CDI's licensing program, highlighting three of CDI's patents and two of WARF's patents. (Declaration of Anthony Tomaselli, ¶ 2, Ex. 1 (hereinafter "Tomaselli Decl.")). This letter was also addressed and sent to Plaintiff's Walkersville, Maryland address. (*Id.*, Ex. 1 at 1). None of these communications included accusations of Plaintiff infringing any of the patents, or in any way mention litigation. (Okada Decl., ¶ 11, Ex. 2; Tomaselli Decl., ¶ 2, Ex. 1).

In response to the letter, counsel for Plaintiff contacted CDI to discuss the matter. (Tomaselli Decl., ¶ 3). On December 13, counsel had a teleconference. (*Id.*). At no time during this discussion did counsel discuss infringement, validity or litigation for that matter, but rather only the framework of a potential license. (*Id.*). Counsel for Plaintiff noted the breadth of the patents-at-issue, and personal commitments she had, and requested that she be afforded until December 23 to respond to the license offer. (*Id.*). Counsel for CDI agreed, expressly stating that the point of the letter was to encourage the parties to further their business discussions. (*Id.*). On December 22, 2016, Plaintiff responded by filing this Action. In the Complaint, Plaintiff sued CDI, but did not name WARF. (D.I. 1). Once Plaintiff sued CDI, CDI and WARF understood that Plaintiff infringes all of the Patents-in-Suit, but has no intention to willingly

license any of the technology. Because this Court lacks personal jurisdiction over all necessary parties and subject matter jurisdiction over this action, WARF and CDI filed suit in the Western District of Wisconsin.[1]

## V. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION[2]

Plaintiff has not and cannot establish that this Court has personal jurisdiction over CDI because CDI does not have the requisite minimum contacts with Delaware. At best, CDI's contacts with Delaware are sporadic, insignificant, and do not show deliberateness on CDI's part to direct its enforcement actions at this District. Moreover, as discussed further below, Plaintiff failed to join WARF, a necessary and indispensable party to this litigation, which also lacks the requisite minimum contacts with Delaware.

### A. Legal Standard

To determine whether personal jurisdiction exists over a defendant, the Federal Circuit conducts a two-step inquiry: (1) whether a forum state's long-arm statute permits service of process and (2) whether assertion of personal jurisdiction violates due process. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012).[3] The plaintiff bears the burden of establishing either general or specific personal jurisdiction. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012).

---

[1] *Cellular Dynamics International, Inc. v. Lonza Walkersville, Inc.*, Case No. 3:17-cv-00027-SLC (W.D. Wis. filed Jan. 12, 2017).

[2] For the same reasons, the case should be dismissed under Rule 12(b)(5) for insufficient service of process. Plaintiffs served CDI pursuant to 10 Del. C. § 3104, which can only be used to serve a nonresident defendant who is otherwise subject to the Court's jurisdiction. *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, No. CIV.A. 19890-NC, 2005 WL 578972, at *8 (Del. Ch. Mar. 3, 2005).

[3] In patent cases, Federal Circuit law applies to the issue of personal jurisdiction. *Grober*, 686 F.3d at 1345.

### *1. Delaware's Long-arm Statute is Co-extensive with Due Process*

The Delaware long-arm statute is co-extensive with the due process clause, but requires a separate inquiry. *M2M Sols. LLC v. Simcom Wireless Sols. Co.*, 935 F. Supp. 2d 740, 743 (D. Del. 2013). This Court can exercise jurisdiction over a defendant only if that defendant:

1) Transacts any business or performs any character of work or service in the State;
2) Contracts to supply services or things in this State;
3) Causes tortious injury in the State by an act or omission in this State;
4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
5) Has an interest in, uses or possesses real property in the State; or
6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time.

10 Del. C. § 3104(c). Sections 3104(c)(1–3), (5), and (6) have been interpreted as specific jurisdiction provisions, while § 3104(c)(4) confers general jurisdiction. *Devicor Med. Prods., Inc. v. Biopsy Sciences, LLC,* 2013 WL 486638, at *5 (D. Del. Feb. 7, 2013).

### *2. General Jurisdiction Requires "Continuous And Systematic" Contacts With the Forum State*

General jurisdiction arises when a defendant maintains contacts with the forum state that are sufficiently continuous and systematic, even when the cause of action has no relation to those contacts. *Grober*, 686 F.3d at 1346. When analyzing general jurisdiction over a nonresident defendant, the Federal Circuit "'explore[s] the nature of [the defendant's] contacts with the [forum State] to determine whether they constitute ... *continuous and systematic* general business contacts.'" *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16 (1984)) (emphasis in original). As the Supreme Court held, these "continuous and systematic" contacts

must be such that they "render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

#### *3. Specific Jurisdiction Requires Evidence of Efforts to Defend, Enforce, or Exclusively License the Patents-in-Suit in the Forum State*

"Specific jurisdiction . . . must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Grober*, 686 F.3d at 1346 (internal quotations omitted). In declaratory judgment patent actions, only those forum contacts made by the defendant patentee to enforce, defend, or license the patents-in-suit are relevant for the jurisdictional analysis. *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) ("[O]nly those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific jurisdiction for [a declaratory judgment] action."). Other activities, such as the patentee's commercialization efforts, are not relevant for this inquiry and should not be considered. *Id.*

Sending cease-and-desist letters to the forum is not enough to trigger personal jurisdiction. *See, e.g., Avocent*, 552 F.3d at 1334 ("crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters") (internal quotations omitted); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (exercising personal jurisdiction based upon cease-and-desist letters alone does not comport with fair play and substantial justice). Due process principles of "fair play and substantial justice" give a patentee the right to inform others about the patent without subjecting itself to the jurisdiction of a foreign forum. *Id.* For personal jurisdiction over a declaratory-judgment defendant patentee to be proper, "other activities" relating to the enforcement or defense of the subject patent are required, including "initiating judicial or extra-judicial patent enforcement within the forum" or entering into an

exclusive license with a forum resident in which the patentee's relationship with the licensee involves substantially more than merely receiving royalty income. *Avocent*, 552 F.3d at 1334–36. As the Federal Circuit held, "a defendant may not be subjected to personal jurisdiction … where the defendant has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but does not, for example, exercise control of the licensees' sales activities, and instead, has no dealings with those licensees beyond the receipt of royalty income." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006).

#### *4. Stream-Of-Commerce Theory Does Not Apply to a Personal Jurisdiction Analysis in a Patent Declaratory Judgment Action*

In a declaratory judgment action, the patentee's "product is a covenant not to sue," not a physical product, and "as such, [the patentee's] product never enters the stream of commerce." *Red Wing Shoe Co.*, 148 F.3d at 1362. Thus, a defendant patentee's acts of "making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability." *Avocent*, 552 F.3d at 1336.

### B. <u>Argument</u>

#### *1. Plaintiff Cannot Establish Personal Jurisdiction Over CDI or WARF Under the Delaware Long-Arm Statute*

Plaintiff has not alleged any facts that would support a finding of jurisdiction under Delaware's long-arm statute. Plaintiff's sole basis for personal jurisdiction is that CDI purportedly "has entered business relationships with entities in this District, such as Astra Zeneca, including licensing the CDI Patents at issue here," and that the headquarters of AstraZeneca's "North America Commercial Business is located in Wilmington, DE." (D.I. 1 at ¶

14). However, "in the declaratory judgment context, specific personal jurisdiction determinations are tied to the underlying enforcement activities that prompted the filing of the suit," not to efforts to commercialize the patents-at-issue. *Liqui-Box Corp. v. Scholle Corp.*, No. CIV.A. 12-464 GMS, 2013 WL 3070872, at *4 (D. Del. June 17, 2013). Moreover, the AstraZeneca agreement to which Plaintiff refers is a contract between CDI and AstraZeneca UK Ltd., a European entity with its registered office in London. (Okada Decl., ¶ 10).

Plaintiff fails to allege any other facts that would support a finding of personal jurisdiction under any of the sections of Delaware's long-arm statute, nor could it. In particular, under the first section of Delaware's long-arm statute, neither CDI nor WARF has directed any enforcement activities for the Patents-in-Suit in the State of Delaware. (Okada Decl., ¶ 3; Falk Decl., ¶ 3). Section (c)(2) also does not apply because neither CDI nor WARF manufactures or regularly sells any products in Delaware or to Delaware residents. (Okada Decl., ¶ 7; Falk Decl., ¶ 2). Neither CDI nor WARF caused tortious injury by an act or omission in Delaware under subsection (c)(3) of the statute, or "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State" to meet the general jurisdiction provision in subsection (c)(4). (Okada Decl., ¶ 7; Falk Decl., ¶ 4). Nor does CDI or WARF own or use property, or contract to insure or act as surety for another in Delaware, as required under subsections (c)(5) and (c)(6). (Okada Decl., ¶ 8; Falk Decl., ¶ 5); 10 Del. C. § 3104(c)(3)–(6).

### *2. Plaintiff Cannot Establish General Jurisdiction Over CDI or WARF Because Their Contacts With Delaware Are Not "Continuous And Systematic."*

Plaintiff cannot establish general jurisdiction over CDI or WARF because their contacts with Delaware are not "continuous and systematic." Neither CDI nor WARF has a physical

presence in Delaware. (Okada Decl.; ¶ 8; Falk Decl., ¶ 5). Neither maintains a corporate office, nor is registered to do business, in Delaware. (*Id.*). Neither has any manufacturing plants, distribution facilities, or sales offices in Delaware. (*Id.*). Neither party has any current employees, distributors, or sales representatives residing or working in Delaware. (*Id.*). Neither party owns, rents, leases, or occupies any real property in Delaware. (*Id.*). Neither party has ever paid income taxes to the State of Delaware. (*Id.*). Instead, Plaintiff solely relies on conclusory allegations of CDI "enter[ing] into business relationships with entities in this District." (D.I. 1 at ¶ 14). Yet Plaintiff's lone example is AstraZeneca. (*Id.*). In fact, CDI entered into a business relationship with AstraZeneca UK Ltd., a London company. (Okada Decl., ¶ 10). AstraZeneca UK Ltd. is a subsidiary of a global corporation with more than 180 locations in over 60 countries, including various locations within the United States. (Declaration of Laura Olsen Dugan, ¶ 4 (hereinafter, "Olsen Decl.")). Even if CDI had contracted with an entity of AstraZeneca located in Delaware, which it did not, that relationship alone would hardly demonstrate that CDI's affiliations with Delaware "are so 'continuous and systematic' as to render [it] essentially at home" there. *See Goodyear*, 564 U.S. at 919.

Although not asserted in Plaintiff's Complaint as a basis for personal jurisdiction, both CDI's and WARF's websites are also insufficient to establish general jurisdiction. CDI's website is mostly static and does not target the Delaware market. (Okada Decl., ¶ 9). It does not contain an interactive order form. (*Id.*). The website only lists two phone numbers under the "Contact" page, a toll free 1-877 number and a local Wisconsin number. (*Id.*). The only interactive feature of the website is a form to electronically request a quote, seek customer or technical support, or send a comment or question. (*Id.*). WARF's website is also primarily static and does not target the Delaware market. (Falk Decl., ¶ 6). The only telephone and fax numbers

listed are local Wisconsin numbers. (*Id.*). WARF's website contains no online interactive features, but merely forms that may be printed. (*Id.*). Such minimal interactive features with no specific direction toward the Delaware market are insufficient to establish general jurisdiction. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (affirming defendants' lack of "substantial and continuous" presence in forum necessary for general jurisdiction where defendants' website was not specifically directed at customers in the forum and did not appear to have generated any sales there); *see also Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (website containing "some interactive features aimed at transacting business" insufficient to establish personal jurisdiction where it was "unclear how frequently those features are utilized or, indeed, whether any District residents have ever actually used [the] website to transact business.").

#### ***3. Plaintiff Cannot Establish Specific Jurisdiction Over CDI or WARF Because They Have Not Engaged in Enforcement, Defense or Exclusive Licensing of the Patents-in-Suit In Delaware***

To adequately assert specific jurisdiction over a defendant patentee, a declaratory judgment plaintiff must make more than rote allegations of licensing activity in the forum, yet this is Plaintiff's sole offering. All the Complaint alleges with any specificity is that CDI "entered into business relationships with entities located in this District, such as Astra Zeneca" and entered into licenses for the Patents-in-Suit. (D.I. 1 at ¶ 14). Neither is sufficient to establish specific jurisdiction.

CDI's alleged "business relationships" with Delaware entities are irrelevant for specific jurisdiction purposes in a declaratory judgment action because they do not establish that CDI pursued enforcement activities related to the Patents-in-Suit in Delaware. *See Radio Sys. Corp.*, 638 F.3d at 789 (holding that only enforcement or defense of the patent-in-suit can give rise to

specific jurisdiction, not other activities such as the patentee's commercialization efforts). To the extent licensing is considered enforcement or defense, exercise of personal jurisdiction requires at least an exclusive licensing relationship with an in-forum licensee, and neither CDI nor WARF has exclusively licensed any of the Patents-in-Suit to a licensee in this District. *See, e.g., Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1020–21 (Fed. Cir. 2009) (fact of in-state non-exclusive licenses of patent-in-suit not sufficient for specific jurisdiction); *Breckenridge Pharm., Inc.*, 444 F.3d at 1366 (personal jurisdiction not proper where defendant has successfully licensed patent in the forum state—even to multiple non-exclusive licensees). In short, the Complaint alleges nothing more than what the Federal Circuit has already held is irrelevant or insufficient to create personal jurisdiction.

#### *4. Plaintiff Cannot Rely on a Stream-Of-Commerce Theory, Which is Irrelevant to Personal Jurisdiction in a Declaratory Judgment Action*

Plaintiff cannot rely on a stream-of-commerce theory to support its allegation that CDI has "establish[ed] continuous and systematic contacts with this forum" because such a theory does not apply to declaratory judgment patent cases. (D.I. 1 at ¶ 14). To the extent that CDI products could be found in Delaware, this would not support a finding of personal jurisdiction in this context. *Avocent*, 552 F.3d at 1336 (dismissing for lack of personal jurisdiction because defendant's sales and offers for sale of products in the forum were irrelevant to the declaratory judgment claim for non-infringement, invalidity, and unenforceability).

## VI. ALTERNATIVELY, THE COURT SHOULD DISMISS THIS CASE FOR FAILURE TO JOIN AN INDISPENSIBLE PARTY

### A. Legal Standard

Under Rule 12(b)(7), an action may be dismissed for failure to join a required party under Rule 19. "Since joinder [under Rule 19] is an issue not unique

to patent law," the Court applies Third Circuit law, rather than Federal Circuit law, in its analysis. *A123 Sys., Inc. v. Hydro–Quebec,* 626 F.3d 1213, 1220 (Fed. Cir. 2010). "When making a Rule 19 determination, the Court may consider evidence outside of the pleadings." *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.,* 201 F.R.D. 337, 340 (D. Del. 2001), *aff'd*, 65 F. *App'x* 803 (3d Cir. 2003). In patent cases, the "patent owner should be viewed as a necessary party if it retains 'any interest' in the patent." *Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1375 (D. Del. 1993) (internal citations omitted). Where the patent owner has merely licensed, rather than assigned the patent, "the patent-holder is a necessary party, because the patent-holder is still the real party in interest with respect to the validity of the patent … To adjudicate the validity or infringement of the patent in such a case, without the patent-holder would constitute a denial of due process." *Dentsply Int'l, Inc. v. Centrix, Inc.*, 553 F. Supp. 289, 294 (D. Del. 1982) (internal citations omitted).

**B. <u>Argument</u>**

CDI is not the owner of the '038 and '620 Patents, but rather their licensee. (Okada Decl., ¶ 3). WARF is the owner of those patents, and retains a number of substantial rights, including the right to practice the patents, the right to grant third parties non-exclusive licenses to the patents for research purposes, and the right to enforce the patents. (Falk Decl., ¶ 3, Ex. A at Sections 2(A)(iv); 2(B)(ii); 2(D); 2(E)(i); 10). "A patent should not be placed at risk of invalidation by the licensee without the participation of the patentee." *A123 Sys., Inc.*, 626 F.3d at 1221 (internal quotations omitted). Given WARF's retention of substantial rights in the '038 and '620 Patents, WARF is an indispensable party to this lawsuit. *Dentsply*, 553 F. Supp. at 294. Accordingly, this Court should dismiss the action under Rule 12(b)(7). *See Suprex Corp. v. Lee Scientific, Inc.*, 660 F. Supp. 89, 94 (W.D. Pa. 1987) (dismissing declaratory action

against patent licensee where court lacked personal jurisdiction over university that owned patent). Moreover, as discussed above, WARF cannot be joined, because this Court lacks personal jurisdiction over it.

# VII. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

## A. Legal Standard

### 1. *The Court May Consider Evidence Outside of the Pleadings for a Factual Challenge to Subject Matter Jurisdiction*

A motion under Rule 12(b)(1) challenging a court's subject matter jurisdiction may present either a facial or factual challenge. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 693 F. Supp. 2d 409, 414 (D. Del. 2010). Where the movant presents a facial challenge, the court must accept all factual allegations in the complaint as true and may only consider the complaint and the documents attached or referenced. *Id.* For a factual challenge, however, the Court "need not confine its consideration to the allegations of the complaint nor accept those allegations as true." *Id.* Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, "to resolve any factual issues bearing on jurisdiction." *Samsung Elecs. Co., Ltd. v. ON Semiconducter Corp.,* 541 F. Supp. 2d 645, 648 (D. Del. 2008). "[P]laintiff bears the burden of proving that jurisdiction exists." *Id.* Here, CDI presents a factual attack, including factual materials with this briefing to demonstrate the lack of case or controversy. However, even under the plaintiff-friendly facial attack standard, Plaintiff has not shown that an actual case or controversy existed at the time the Complaint was filed.

### 2. ***Party Seeking Declaratory Judgment Must Prove the Existence of a Case or Controversy at the Time the Complaint was Filed***

The party seeking the declaratory judgment must establish that the Court had jurisdiction at the time the complaint was filed. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 906 (Fed. Cir. 2014). As the Federal Circuit has held, "post-complaint facts cannot create jurisdiction where none existed at the time of filing." *Id.* Following the Supreme Court's decision in *Medlmmune*, federal courts have subject matter jurisdiction only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and citation omitted). A case or controversy must be "based on a *real* and *immediate* injury or threat of future injury that is caused by the defendants —an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (emphasis in original).

In patent cases, the case or controversy requirement "may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp v. STMicroelectronics*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). "In the context of conduct prior to the existence of a license, declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement *without some affirmative act by the patentee." Id.* at 1380-81 (emphasis added). Thus, "a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interests between the parties, let alone the existence of a 'definite and concrete' dispute."

*Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009). *See also 3D Systems, Inc. v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 805–806 (E.D. Mich. 2011) (dismissing the action for lack of subject matter jurisdiction where the patent holder had not made any mention of any of the particular claims and how they read on the declaratory judgment plaintiff's patents); *Wooster Bush v. Berman*, No. 5:06-cv-474, 2008 WL 1744782, at *3–5 (N.D. Ohio 2008) (finding that subject matter jurisdiction did not exist because, unlike *SanDisk*, there was no evidence that the patent holder had identified how a product infringed specific claims of the patents).

**B. <u>Argument</u>**

This case should be dismissed for lack of subject matter jurisdiction because Plaintiff cannot establish that a substantial and immediate case or controversy existed at the time the Complaint was filed. To the contrary, the facts show that the parties at most were involved in discussions concerning a potential business deal regarding CDI's patented technology at the time Plaintiff filed the Complaint. The facts do not support Plaintiff's claim that CDI "alleged that some of Lonza's cell reprogramming kits that can be used to make iPSCs *infringed*" the Patents-in-Suit. (D.I. 1 at ¶ 73) (emphasis added). Indeed, CDI had not taken any affirmative actions, and Plaintiff has pointed to none, that demonstrate CDI had an intent to sue Plaintiff at the time the Complaint was filed. In all of its written and oral communications with Plaintiff, CDI never once accused Plaintiff of infringement. In the time leading up to this lawsuit, CDI did not take any position that would require Plaintiff to either pursue arguably illegal behavior or abandon what Plaintiff has claimed a right to do.

### *1. None of CDI's Communications With Plaintiff Created a "Substantial" and "Immediate" Case or Controversy*

Prior to the filing of the Complaint in this action, CDI sent the following communications to Plaintiff: (1) the November 4, 2015 letter from CDI's Chief Technology Officer, Takashi Okada, to Plaintiff introducing CDI's licensing program; (2) a follow-up email from Mr. Okada, on December 16, 2015, including additional information about the licensing program and a list of patents available for license; and (3) CDI and WARF's November 29, 2016 letter, seeking to continue the 2015 discussions regarding CDI's licensing program. (Okada Decl., ¶ 11, Ex. 2; Tomaselli Decl., ¶ 2, Ex. 1). None of these communications demonstrates a substantial and immediate intent to enforce the Patents-in-Suit, or any other CDI patents, against Plaintiff. Nowhere in any of the communications does CDI accuse Plaintiff of infringing any of its patents or mention litigation. (*Id.*). None of the communications makes any comparison between CDI's patents and Plaintiff's products. (*Id.*). Accordingly, the communications between CDI and Plaintiff do not give rise to the necessary subject matter jurisdiction. *See Dow Corning Compound Semiconductor Solutions, LLC v. Cree, Inc.*, No. 11-14255, 2013 WL 993701, at *9 (E.D. Mich. Mar. 13, 2013) (granting patentee's motion to dismiss declaratory judgment action for lack of subject matter jurisdiction because, among other things, the patentee was not a non-practicing entity and the letter did not reference litigation, but merely "indicated that [patentee] simply wished to 'introduce Cree's SiC Materials licensing program' and requested a meeting sometime in the following three months.").

As one court recently explained, the type of letter that gives rise to subject matter jurisdiction is one in which a "patentee has either demonstrated a preparedness to litigate against the prospective declaratory judgment plaintiff, accused the prospective declaratory judgment plaintiff of infringement, affirmatively asserted its rights to license fees, or engaged in some

combination of all three." *Geospan Corp. v. Pictometry Intern Corp.*, 598 F. Supp. 2d 968, 970 (D. Minn. 2008). For instance, in *Sony Elecs. Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1274, 1285–86 (Fed. Cir. 2007), the Federal Circuit held that a letter inviting a party to engage in licensing negotiations gave rise to declaratory judgment jurisdiction where the letter asserted that the declaratory judgment plaintiff needed to either obtain a license or explain in detail why it did not need one.

In *Hewlett Packard v. Acceleron*, the Federal Circuit found subject matter jurisdiction where the patent holder, Acceleron, sent a letter to Hewlett Packard stating that one of its patents "relates" to a particular Hewlett Packard product line. 587 F.3d at 1360. However, the Court explained that the letter alone was not sufficient to give rise to subject matter jurisdiction because "merely identifying [a] patent and the other party's product line without more, cannot establish adverse legal interests between the parties, let alone the existence of a 'definite and concrete dispute.'" *Id.* at 1362. The *Hewlett Packard* Court's finding of subject matter jurisdiction was based on the fact that Acceleron was solely a licensing entity and "without enforcement it receives no benefits from its patents," *id.* at 1364, as well as the fact it had refused to enter into a covenant not to sue.

This is not a case like *Sony* or *Hewlett Packard*. CDI's communications did not state or even imply that Plaintiff needs a license, nor did they ask Plaintiff to explain why its products do not infringe. (Okada Decl., ¶ 11, Ex. 2; Tomaselli Decl., ¶ 2, Ex. 1). The list of patents that CDI offered to license on December 16, 2015 includes 19 patents and patent applications, only seven of which are now the Patents-in-Suit. (Okada Decl., ¶ 11, Ex. 2 at 5). The communications make no comparisons between any of the patents offered as part of CDI's licensing program and Plaintiff's products or processes. (Okada Decl., ¶ 11, Ex. 2; Tomaselli Decl., ¶ 2, Ex. 1).

Moreover, in the twelve months that CDI and Plaintiff have been discussing a potential business deal, CDI was not asked to, and thus never refused to sign a covenant not to sue. (*Id.*). Finally, CDI is not a holding company whose sole business is to license patents; it is a manufacturing and development company which benefits from its own use of patented technology. (Okada Decl., ¶ 2).

***2. A Two-year Old Declaration on Secondary Considerations of Non-obviousness in Reexamination of the '620 Patent Does Not Create a "Substantial" and "Immediate" Case or Controversy***

Plaintiff also claims that a two-year old declaration filed by CDI's then-Chief Technology Officer, Nicholas Seay, in the *ex parte* reexamination proceeding filed by Plaintiff for the '620 Patent also constitutes a "threat by CDI" against Plaintiff. (D.I. 1 at ¶¶ 70–71). However, Mr. Seay's declaration dealt with copying as a secondary consideration of nonobviousness of the '620 Patent, and mentioned Plaintiff as merely one of a list of individuals and companies developing iPS cell lines using methods similar to those claimed in the '620 Patent. (Okada Decl., ¶ 4, Ex. 1 at ¶¶ 3–7). It did not accuse Plaintiff of infringement or threaten Plaintiff with litigation. In the two years between the filing of Mr. Seay's declaration and Plaintiff's filing of this action, CDI had not brought suit against any of the entities listed. (*Id.*, ¶ 5). Thus, Mr. Seay's declaration did not give rise to subject matter jurisdiction on the '620 Patent, much less the other six Patents-in-Suit.

***3. The Western District Complaint Does Not Retroactively Confer Subject Matter Jurisdiction.***

The existence of justiciable controversy is determined as of the time of the filing of the complaint. *See Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1383 (Fed. Cir. 2010). Subsequent events cannot change the fact that no actual controversy existed at the time the original complaint was filed. *See GAF Building Materials Corp. v. Elk Corp. of*

*Dallas,* 90 F.3d 479, 483 (Fed. Cir. 1996) ("[L]ater events may not create jurisdiction where none existed at the time of filing.") (internal quotations omitted). In this case, CDI's filing of a complaint in the Western District of Wisconsin on January 12, 2017, in response to Plaintiff's filing of this action, cannot retroactively confer subject matter jurisdiction. Because there was no case or controversy at the time Plaintiff filed this action on December 22, 2016, this action should be dismissed for lack of subject matter jurisdiction.

## VIII. CONCLUSION

For the foregoing reasons, CDI respectfully requests the Court grant CDI's motion to dismiss for lack of personal jurisdiction, failure to joint an indispensable party, and lack of subject matter jurisdiction

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
kjacobs@mnat.com

*Attorneys for Defendant Cellular Dynamics International, Inc.*

OF COUNSEL:

Anthony A. Tomaselli
Kristin Graham Noel
Carly S. Conway
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
(608) 251-5000

February 2, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 2, 2017, upon the following in the manner indicated:

Chad M. Shandler, Esquire *VIA ELECTRONIC MAIL*
Travis S. Hunter, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
*Attorneys for Plaintiff*

Anne Elise Herold Li, Esquire *VIA ELECTRONIC MAIL*
James K. Stronski, Esquire
Preetha Chakrabarti, Esquire
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
*Attorneys for Plaintiff*

*/s/ Karen Jacobs*

Karen Jacobs (#2881)